# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Medical Management Group, LLC,<br><br>Debtor.<br><br>Robert F. Anderson, as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>Rajesh Bajaj, M.D.,<br>John Culleton, M.D.,<br>Vinod K. Jona, M.D.,<br>Zothanmawii Khiangte, M.D.,<br>H. Stuart Markwell, M.D.,<br>Heather F. McCown, M.D.,<br>Gerald B. Miele, M.D., F.A.C.E.,<br>Jeffrey P. Muha, D.P.M., F.A.C.P.A.S.,<br>Meenakshi A. Pande, M.D.,<br>Supen R. Patel, M.D.,<br>Michael D. Pavy, M.D., F.A.C.P.,<br>Sreenivas V. Rao, M.D.,<br>William D. Remmes,<br>Kevin W. Shea, M.D., F.A.C.P.,<br>James C.H. Smith, M.D.,<br>Robert E. Turner, III, M.D., F.A.C.P., and<br>Richard D. Weber, D.P.M., F.A.C.F.A.S.<br><br>Defendants. | C/A No. 13-01264-DD<br><br>Adv. Pro. No. 15-80029-DD<br><br>Chapter 7<br><br>**ORDER DENYING MOTION TO DISMISS** |

      THIS MATTER comes before the Court on a Motion to Dismiss ("Motion") filed by

Rajesh Bajaj, M.D., John Culleton, M.D., Vinod K. Jona, M.D., Zothanmawii Khiangte, M.D.,

H. Stuart Markwell, M.D., Heather F. McCown, M.D., Gerald B. Miele, M.D., F.A.C.E.,

Jeffrey P. Muha, D.P.M., F.A.C.P.A.S., Meenakshi A. Pande, M.D., Supen R. Patel, M.D.,

Michael D. Pavy, M.D., F.A.C.P., Sreenivas V. Rao, M.D., William D. Remmes, Kevin W.

Shea, M.D., F.A.C.P., James C.H. Smith, M.D., Robert E. Turner, III, M.D., F.A.C.P., and

Richard D. Weber, D.P.M., F.A.C.F.A.S., ("Defendants"), and the response of Robert F. Anderson, chapter 7 trustee for Medical Management Group, LLC ("Plaintiff" or "Trustee"). The Court held a hearing on the Motion on July 16, 2015. Having read the papers, heard the arguments of counsel, and considered the applicable law and evidence, the Court denies the Motion.[1] Defendants shall file an answer to the complaint within fourteen (14) days of the entry of this order, in accordance with Fed. R. Bankr. P. 7012(a).

### I.  Summary of Facts and Procedural History

The facts underlying this adversary proceeding are complex and extend back nearly eight years. Fortunately the disposition of this Motion does not require recitation of them at length.[2] Defendants are a group of doctors[3] that either were or are members and/or managers of Medical Management Group, LLC ("Debtor"). Comp. ¶¶ 2 – 19.[4] Debtor provided management services to Carolina Health Services, P.A.,[5] a private physician group in Florence, South Carolina ("Carolina Health").[6] Def. Mot. Dismiss, p. 3 – 4. Defendants were, at varying points, also shareholders in Carolina Health. Compl. ¶ 37. For the majority of the

---

[1] The parties agreed at the hearing the Defendant Khiangte, based on representations by the Defendants, was improperly named as a defendant with regards to Counts I and II, and Trustee agreed not to pursue Khiangte on these causes of action unless the representations proved false.

[2] The facts recited herein are not intended to be comprehensive or understood as findings of fact disposing of any issues in this case. They are merely the summary understanding of the Court from the parties' motion papers and oral explanations presented at the hearing.

[3] Excepting William D. Remmes, who was the administrator of Carolina Health.

[4] The complaint referenced herein, consistent with the complaint the parties reference in their moving papers, is the Second Amended Complaint, Dkt. 23.

[5] Carolina Health Services, P.A. filed its own bankruptcy petition in this Court on March 1, 2013. Case No. 13-01268-dd. Robert F. Anderson was also appointed chapter 7 trustee in that case. Although the case is still currently open, there has been no docketed activity in it for over a year.

[6] Debtor also provided services to Carolina Podiatry, P.A. in Florence, South Carolina. According to Defendants it is now defunct.

2

time period relevant to this adversary proceeding, Debtor's primary source of revenue was the fees paid to it by Carolina Health. Compl. ¶ 30.

Carolina Health's most profitable physician practice was oncology. *See* Compl. ¶ 145. Debtor provided Carolina Health with oncology drugs by purchasing the drugs from a company called Oncology Supply. Def. Mot. Dismiss, p. 4. After buying the drugs, Debtor would transfer them to Carolina Health for Carolina Health's doctors to dispense and administer. *Id.*, p. 5. After administering the drugs, Carolina Health would then receive payments from patients, insurance providers, Medicare, and/or Medicaid, and remit funds to the Debtor for the costs of the drugs plus a percentage fee; keeping the remaining profit. *Id*. This system is referred to as a "buy and bill" model. *Id*.

Debtor allegedly became insolvent in 2007. Compl. ¶¶ 44 – 49. At some point, Debtor began to accumulate debt to Oncology Supply when Carolina Health failed to reimburse the Debtor for the cost of the drugs. *Id*. ¶¶ 81 – 103. The financial difficulties of the Debtor and Carolina Health escalated in early 2010, when Oncology Supply sent the Debtor an email stating that Debtor had an overdue balance with Oncology Supply totaling $658,415.44 and demanding payment. Compl. ¶ 98. Shortly thereafter, Debtor's managers renegotiated Debtor's management agreement with Carolina Health. *Id*. ¶¶ 69 - 72. This new agreement did not address the outstanding debt owed from Carolina Health. *Id*. ¶ 71. As a result, Plaintiff alleges, by July 2, 2010, the Debtor's overdue balance had increased to $1,015,159.62, and Oncology Supply required the Debtor to sign a promissory note in lieu of legal action. *Id*. ¶ 99.

Despite these problems, Debtor did not attempt to recoup the losses it was incurring from Carolina Health. *Id*. ¶¶ 59 – 62, 71, 72. Debtor continued to purchase oncology drugs

3

and transfer them to Carolina Health without receiving reimbursement. *Id*. ¶ 81. Defendants all continued to receive their membership distributions from the Debtor, never voted to change the management of the Debtor, and never forced Carolina Health to pay the Debtor for the drugs, despite also being shareholders and board members of Carolina Health. *Id*. ¶¶ 59 – 62, 76 – 80. Defendants allegedly received distributions from the Debtor from 2008 through the petition date totaling nearly half a million dollars. *Id*. ¶ 76. They also received payments on debts owed to them by Carolina Health, and salaries from Carolina Health. Compl. ¶¶ 157 – 161.

By September of 2010, Carolina Health's oncology group was struggling to maintain services to its patients because Oncology Supply was no longer providing a steady supply of drugs due to the Debtor's outstanding debt. *Id*. ¶¶ 109, 110. On September 23, 2010, the Debtor held a members meeting. *Id*. ¶ 110. At that meeting, one of the member-oncologists informed the other members he had spoken with McLeod Regional Medical Center ("McLeod") about assisting with Carolina Health's cancer patients. *Id*.  McLeod agreed to loan Carolina Health the cancer drugs their patients needed until the end of the week, and take over patient care starting the following week. *Id*. Later on that year, the Carolina Health oncologists and oncology staff left Carolina Health and the Debtor to join McLeod. *Id*. ¶¶ 120 – 123, 138. Debtor also subleased the portion of the Carolina Health facility that had been used by the oncology department, along with the equipment, to McLeod. *Id*. ¶ 126, 139.

Debtor never recovered from the departure of the oncology department. *See id*. ¶¶ 74, 127 – 132; Def. Mot. Dismiss p. 7. By 2012, it had also lost its pulmonology department and only had six members. Def. Mot. Dismiss, p. 6 – 8. Carolina Health and the Debtor both began discussions with potential buyers, but were unable to finalize a sale or merger. *Id*., p. 8.

4

Carolina Health closed on December 31, 2012, and filed for protection under chapter 7 of the Bankruptcy Code on March 1, 2013. *Id*. The Debtor filed its petition that same date. *Id*.

## II.    Summary of the Complaint

Trustee initiated this adversary proceeding seeking recovery from the Defendants for their actions and/or inactions that allegedly contributed to the financial demise of the Debtor. Trustee's complaint states eight causes of action and corresponding requests for relief. Two of the causes of action involve avoiding the transfers of the oncology drugs from the Debtor to Carolina Services, which the Trustee argues ultimately benefited the Defendants, and are thus recoverable from them. Five of the causes of action relate to whether the Defendants breached their duties as members of the LLC under state law, and whether the Trustee can recover damages. The final cause of action asks the Court to equitably subordinate the claims of the Defendants filed in the bankruptcy case pursuant to 11 U.S.C. § 510(c)[7].

## III.    Legal Standard

Fed. R. Civ. Pro. 8(a)(2)[8] requires a pleading requesting relief to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A party may challenge the sufficiency of this pleading by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[9]. *Edwards v. City Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[7] Further references to the Bankruptcy Code, 11 U.S.C. *et. seq.*, will be by section number only.

[8] Made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7008.

[9] Made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012.

5

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Harman v. Unisys Corp.*, 356 Fed. Appx. 638, 640 (4th Cir. 2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### IV. Analysis

Defendants ask the Court to dismiss the Trustee's complaint for failing to state any viable causes of action. Defendants' primary arguments are (1) that the avoidance actions should be dismissed because the Trustee cannot recover from the Defendants pursuant to § 550, and (2) that the Trustee has not "pled around" the business judgment rule, thus the state law causes of action related to Defendants' duties as members and managers of the LLC must fail. The Motion is denied. Plaintiff's complaint alleges facts sufficient to support a theory of recovery under § 550, and the business judgment rule requirement is inapplicable here because the complaint alleges fraud. Defendants' remaining arguments do not support dismissal and will be addressed in turn.

#### a. Recovery Pursuant to § 550

Defendants argue that the Trustee cannot recover the avoided transfers from them because (1) the Trustee did not name Carolina Health, the initial transferee, as a party to the adversary proceeding; (2) the benefit Defendants received from the drug transfers is too tangential to fall within § 550's "for whose benefit" scope; and (3) Defendants were not

6

mediate or immediate transferees. Additionally, Defendants argue that the transfers cannot be recovered from them as the complaint is pled because the Trustee (1) has not pled fraud with particularity, and (2) has not asked the Court to pierce the corporate veil.

Section 550 of the Bankruptcy Code provides that upon avoiding a transfer, a trustee:

may recover, for the benefit of the estate … from -
(1) the initial transferee … or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). Mediate and immediate transferees may possess a good faith defense. *See id*. § 550(b).

Courts have generally understood the trustee's § 550 power as broadly piercing "through the form of the transaction" to recover from the party that "'actually benefitted from the transfer.'" *Terry v. Meredith (In re Stephen S. Meredith, CPA, P.C.)*, 527 F.3d 372, 375 (4th Cir. 2008) (citing *In re Compton Corp.*, 831 F.2d 586, 595 (5th Cir. 1987)). Because the Bankruptcy Code does not specifically define the four categories of parties from whom the trustee can recover, determination of a liable party is necessarily fact-specific. *See e.g., Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Props. Ltd. Pshp.)*, 99 F.3d 151, 155 (4th Cir. 1996) (discussing multiple different fact scenarios where courts have concluded parties are initial versus subsequent transferees); *Huffman v. Commerce Sec. Corp. (In re Harbour),* 845 F.2d 1254, 1256 (4th Cir. 1988) (discussing facts giving rise to a party being categorized as a conduit rather than an initial transferee); *Meredith*, 527 F.3d at 375 (noting that while the traditional example of an "entity for whose benefit" a transfer is made involves a debtor and a guarantor, "nothing in the text of § 550(a)(1)" limits the definition of an "entity for whose benefit") (citations omitted); *Redmond et al. v. NCMIC Fin. Corp. (In re Brooke)*, 488 B.R. 459, 468 – 69 (Bankr. D. Kan. 2013) (discussing the facts necessary to show whether a benefit received is an actual benefit rather than a theoretical benefit).

7

Although some courts have required trustees to avoid a transfer from an initial transferee before recovering from a subsequent transferee, *e.g., Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992), the majority of courts "have rejected the notion that a trustee must first avoid a transfer against an initial transferee prior to recovering that transfer from a subsequent transferee." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 31 (S.D.N.Y. 2013). Avoidance provisions in the Bankruptcy Code "do not address against whom an avoidance action should be brought, such that 'avoidability is an attribute of the transfer and not the party.'" *Id*. at 31 (citation omitted). Additionally, requiring the joinder of an initial transferee in an avoidance action "can complicate avoidance litigation while providing no benefit," and severely limit potential recovery if the initial transferee no longer has an interest in the property. *Brooke*, 443 B.R. at 855 (questioning the reasoning of the circuit precedent requiring the inclusion of an initial transferee in an avoidance action).

In light of this survey of the case law surrounding determinations of § 550 liability, the Court rejects Defendants' arguments that the alleged facts fail to support a theory of recovery from Defendants of avoidable transfers. First, assuming Carolina Health is the initial transferee, the Trustee need not avoid the transfers with regards to Carolina Health before pursuing subsequent transferees. There is no requirement in the Code that an initial transferee must be included as a party in an avoidance action, and the Court joins the majority viewpoint in declining to create one. Second, the facts in the complaint are sufficient to support a theory of recovery. The complaint alleges that Defendants received a benefit from the transfer of the drugs: debts owed to them by Carolina Health were paid down due to Carolina Health misdirecting drug payments. It also states that Defendants received salaries from Carolina Health

8

on account of the transfers, permitting the Court to infer that Defendants may be initial, mediate, or immediate transferees. Finally, it claims that Defendants received their salaries and debt payments with full knowledge that the Debtor was insolvent, thus alleging that if the Defendants were mediate or immediate transferees, they did not receive the transfers in good faith. The Court can therefore plausibly infer, for pleading purposes, that Defendants may fall within the four categories of liable parties listed in § 550.

As to the remaining arguments requesting dismissal of the avoidance causes of action: Defendants argue that Plaintiff has not pled fraud with particularity as is required by Rule 9[10], and, separately, that in order to recover from the Defendants individually, the Trustee must pierce the corporate veil. First, "[t]he particularity requirement is relaxed when fraud is pled by a bankruptcy trustee." *Campbell v. Cathcart et. al. (In re Derivium Capital, LLC)*, 380 B.R. 429, 419 (Bankr. D.S.C. 2006) (citation omitted). Even without this relaxed standard, the Trustee's complaint complies with Rule 9. The purpose of requiring fraud to be pled with particularity is to "provide notice to a defendant of its alleged misconduct … [and] eliminate fraud actions in which all the facts are learned after discovery." *U.S. ex. rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (citations omitted). Rule 9 requires complaints to set forth the "the who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted). Here, the complaint alleges that over a specific period of time and through a specific number of transactions, Defendants deliberately used the Debtor to provide Carolina Health with oncology drugs, then mis-directed the drug payments for their own

---

[10] Made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7009.

benefit rather than pay the Debtor. These facts supply the who, what, where, when, and how. The fraud allegations are pled in compliance with Rule 9.

Plaintiff has not asked to pierce the corporate veil, but Plaintiff is not required to do so. Courts may pierce the corporate veil and hold shareholders personally liable for the debts of the corporation when the shareholders have used the corporation as a "mere instrumentality or alter ego of its shareholders." *Hovis v. Powers Constr. Co., Inc. (In re Hoffman Assocs., Inc.)*, 194 B.R. 943, 963 (Bankr. D.S.C. 1995). However, Plaintiff is not seeking to hold Defendants personally liable for the debts of the Debtor. He seeks recovery from Defendants by avoiding transfers made from Debtor to Carolina Health that ultimately resulted in Defendants personally receiving some sort of benefit or transfer. Although the end result of the two causes of action may be similar in that the recovery will benefit creditors, both causes of action need not both be pled for one to survive a motion to dismiss, and pleading a cause of action to pierce the corporate veil is not a prerequisite for recovery under the other causes of action.

### b. The Business Judgment Rule

Counts III, IV, V and VI of the Trustee's complaint all relate to state law duties Defendants had to the Debtor as members and/or managers of the Debtor. Defendants agree with the Trustee that as members and managers of an LLC, they "owe a duty of care to the company to refrain from 'engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law.'" Def. Mot. Dismiss, p. 19 (citing S.C. Code Ann. § 33-44-409(c) (2015)). The parties also agree that members and managers of LLCs are subject to the business judgment rule, which immunizes them from liability "where there is a reasonable basis to indicate the transaction was made in good faith." *Derivium Capital*, 380

B.R. at 417. This rule requires causes of action brought against members and managers of an LLC in relation to their business decisions to "plead around the business judgment rule to avoid dismissal." *Id*. The rule does not apply, however, when there are allegations that the members and managers have "engaged in self-dealing, fraud, or other unconscionable conduct." *Id*.

The complaint alleges that Defendants engaged in self-dealing by using their positions as members of the Debtor to transfer funds from the Debtor to Carolina Health to benefit Defendants. It also alleges fraud, by claiming that the Defendants deliberately engaged in this scheme to ensure Carolina Health avoided paying it debts to the Debtor. Allegations of misconduct that indicate the members' interests were not aligned with their entity, if true "preclude the application of … the business judgment rule." *Campbell*, 380 B.R. at 417. Counts III through VI need not be dismissed for failure to plead around the rule.

    *c. Remaining Arguments for Dismissal*

The Trustee's Sixth Cause of Action asserts that, should this Court find that the non-managing members of the LLC did not owe the LLC fiduciary duties, the Court still find them liable as "aiding and abetting" breaches of fiduciary duties. Courts have recognized a cause of action for aiding and abetting a breach of a fiduciary duty when (1) there was a breach of a fiduciary duty; (2) the defendant knowingly participated in the breach; and (3) damages. *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 50 (S.C. 1996). To support a plea of actual knowledge, a plaintiff must allege that the defendant actually knew of the bylaws or statutory duty that was being violated. *Id*. "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Id*.

The complaint states a viable cause of action for a breach of fiduciary duties. The complaint alleges multiple instances of member meetings and discussions of various business decisions. The complaint explains that the operating agreement of the Debtor articulated the specific duties owed to the Debtor. Additionally, Defendants, collectively, are a group of well-educated professionals. Assuming certain Defendants did not directly breach their fiduciary duties to the Debtor, the complaint sufficiently raises the issues of Defendants' actual knowledge of the fiduciary duties owed to the Debtor by others, and active participation in breaches of those duties.

Defendants argue that the Court should dismiss Count VII of the Trustee's complaint because it requests a remedy at equity when a remedy already exists in law. It is too soon in this proceeding to require Plaintiff to choose a remedy. *See King v. Carolina First Bank*, 26 F.Supp.3d 510, 519 (D.S.C. 2014) (noting that plaintiffs may allege alternate theories of relief, and it is too soon in the pleadings stage to dismiss one theory or the other). Count VII may therefore proceed.

Finally, Defendants argue that the Count VIII, requesting equitable subordination of the Defendants' claims filed in the bankruptcy case, should be dismissed because Plaintiff has failed to state other viable causes of action. Because the Court is not dismissing the Trustee's other causes of action, this argument fails. Regardless, success on a cause of action is not a prerequisite to equitable subordination of a claim. *See* Fed. R. Bankr. P. 7001(8) (requiring an adversary proceeding to subordinate an allowed claim without requiring the adversary proceeding to include any additional causes of action). Section 510(c) permits a court to subordinate a claim using the "principles of equitable subordination." Equitable subordination requires a showing that a creditor engaged in "'some type of inequitable conduct'" that

12

"'resulted in injury … or conferred an unfair advantage on the claimant.'" *U.S. v. Noland*, 517 U.S. 535, 540 (1996) (quoting *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977)). Courts have subordinated claims for a variety of transgressions, without requiring allegations of different causes of action, and in response to conduct that might not give rise to a separate, stand-alone complaint. *See e.g., In re Reed*, 11 B.R. 258, 277 (Bankr. D. Utah 1981) (subordinating a creditor's claim when the creditor, after being informed of the bankruptcy, spread rotting trash in the front yard of the debtor's owners); *In re Clamp-All Corp.*, 233 B.R. 198, 212 (Bankr. E.D. Mass. 1999) (subordinating creditors' claims when the creditors filed a competing plan and disclosure statement during the debtor's exclusivity period). A party need not plead a separate cause of action to proceed with an equitable subordination request.

V.    **Conclusion**

The Trustee's complaint sufficiently pleads the eight causes of action. Defendants' Motion is denied.

AND IT IS SO ORDERED.


**FILED BY THE COURT**
**07/23/2015**



Entered: 07/24/2015

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

13